**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                      :
                                       :

          Plaintiff,             :     Civil Action No. 1:21-cv-1762
                                         :

v.                                     :     **COMPLAINT FOR VIOLATIONS OF**
                                        :     **SECTIONS 14(a) AND 20(a) OF THE**
ENERGY TRANSFER LP, KELCY L.      :     **SECURITIES EXCHANGE ACT OF**
WARREN, STEVEN R. ANDERSON,     :     **1934**
RICHARD D. BRANNON, RAY C. DAVIS,   :
MICHAEL K. GRIMM, THOMAS E. LONG,   :     **JURY TRIAL DEMANDED**
MARSHALL S. MCCREA, JOHN W.        :
MCREYNOLDS, JAMES R. PERRY,       :
MATTHEW S. RAMSEY, RAY W.         :
WASHBURNE, ELK MERGER SUB LLC,    :
ELK GP MERGER SUB LLC, and LE GP,    :
LLC,                                        :

          Defendants.
---------------------------------------------------------

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

     1.     This is an action brought by Plaintiff against Energy Transfer LP ("Energy

Transfer" or the "Company") and the members Energy Transfer's board of directors (the "Board"

or the "Individual Defendants" and collectively with the Company, the "Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between Enable Midstream Partners, LP

("Enable") and the Company.

2.       Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on March 18, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company unitholders.  The Registration Statement recommends that Company unitholders vote in favor of a proposed transaction whereby Elk Merger Sub LLC ("LP Merger Sub"), a direct wholly owned subsidiary of Energy Transfer, will merge with and into Enable with Enable surviving as a wholly owned subsidiary of Energy Transfer; meanwhile, Elk GP Merger Sub LLC ("GP Merger Sub"), a direct wholly owned subsidiary of Energy Transfer, will merge with and into Enable GP, LLC, the sole general partner of Enable, with Enable GP, LLC surviving the transaction as a direct wholly owned subsidiary of Energy Transfer; CenterPoint Energy, Inc. and OGE Energy Corp. collectively own approximately 79% of the outstanding common units of Enable and transfer all of their rights, titles, and interests to Enable (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Enable unitholder will receive 0.8595 Energy Transfer units (the "Merger Consideration").

3.       As discussed below, Defendants have asked Energy Transfer unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by Enable's financial advisors, Intrepid Partners, LLC ("Intrepid"), and Goldman Sachs & Co. LLC ("Goldman Sachs" and together with Intrepid, the "Financial Advisors") regarding the Company, Enable, and the pro forma company.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming unitholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Energy Transfer units and has held such units since prior to the wrongs complained of herein.

10. Individual Defendant Kelcy L. Warren has served as a member of the Board since 2007and is the Executive Chairman of the Board.

11. Individual Defendant Steven R. Anderson has served as a member of the Board since.

12. Individual Defendant Richard D. Brannon has served as a member of the Board since.

13. Individual Defendant Ray C. Davis has served as a member of the Board since.

14. Individual Defendant Michael K. Grimm has served as a member of the Board since.

15. Individual Defendant Thomas E. Long has served as a member of the Board since 2019 and is the Co-Chief Executive Officer.

16. Individual Defendant Marshall S. McCrea has served as a member of the Board since 2009 and is the Co-Chief Executive Officer.

17. Individual Defendant John W. McReynolds has served as a member of the Board since 2005.

18. Individual Defendant James R. Perry has served as a member of the Board since 2020.

19. Individual Defendant Matthew S. Ramsey has served as a member of the Board since 2012.

20. Individual Defendant Ray W. Washburne has served as a member of the Board since 2019.

21. Defendant Energy Transfer is a Delaware limited partnership and maintains its principal offices at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225. The Company's units trades on the NASDAQ Stock Exchange under the symbol "ET."

22.     Defendant LP Merger Sub is a Delaware liability company and a wholly-owned subsidiary of the Company.

23.     Defendant GP Merger Sub is a Delaware liability company and a wholly-owned subsidiary of the Company.

24.     Defendant LE GP is a Delaware liability company and the sole general partner of the Company.

25.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

26.     The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A.     **The Proposed Transaction**

27.     Energy Transfer, provides energy-related services. The Company owns and operates approximately 9,400 miles of natural gas transportation pipelines and three natural gas storage facilities in Texas; and 12,340 miles of interstate natural gas pipelines. It also sells natural gas to electric utilities, independent power plants, local distribution companies, industrial end-users, and other marketing companies. In addition, the company owns and operates natural gas gathering and natural gas liquid (NGL) pipelines, processing plants, and treating and conditioning facilities in Texas, New Mexico, West Virginia, Pennsylvania, Ohio, Oklahoma, Kansas, and Louisiana; natural gas gathering, oil pipeline, and oil stabilization facilities in South Texas; and a natural gas gathering system in Ohio, as well as transports and supplies water to natural gas producers in Pennsylvania. Further, it owns approximately 4,823 miles of NGL pipelines; NGL and propane fractionation facilities; NGL storage facilities with working storage capacity of approximately 50 million barrels (MMBbls); and other NGL storage assets and terminals with an

aggregate storage capacity of approximately 17 MMBbls. Additionally, the company sells

gasoline, middle distillates, and motor fuel at retail, as well as crude oil, NGLs, and refined

products; operates convenience stores; and distributes motor fuels and other petroleum products.

It provides natural gas compression services; carbon dioxide and hydrogen sulfide removal, natural

gas cooling, dehydration, and British thermal unit management services; and manages coal and

natural resources properties, as well as sells standing timber, leases coal-related infrastructure

facilities, collects oil and gas royalties, and generates electrical power. The Company was formerly

known as Energy Transfer Equity, L.P. and changed its name to Energy Transfer LP in October

2018. Energy Transfer was founded in 1996 and is headquartered in Dallas, Texas.

28.     On February 17, 2021, the Company and Enable jointly announced the Proposed

Transaction:

> DALLAS & OKLAHOMA CITY--(BUSINESS WIRE)--Feb. 17, 2021-- Energy Transfer LP (NYSE: ET) ("ET" or "Energy Transfer") and Enable Midstream Partners, LP (NYSE: ENBL) ("Enable") today announced that they have entered into a definitive merger agreement whereby Energy Transfer will acquire Enable in an all-equity transaction valued at approximately $7.2 billion. Under the terms of the agreement, Enable common unitholders will receive 0.8595 ET common units for each Enable common unit, an exchange ratio that represents an at-the-market transaction, based on the 10-day volume-weighted average price of ET and Enable common units on February 12, 2021. In addition, each outstanding Enable Series A preferred unit will be exchanged for 0.0265 Series G preferred units of Energy Transfer. The transaction will include a $10 million cash payment for Enable's general partner.
>
> **Positive Financial Impact**
>
> The transaction furthers Energy Transfer's deleveraging efforts as it is expected to be immediately accretive to free cash flow post-distributions, have a positive impact on credit metrics and add significant fee-based cash flows from fixed-fee contracts.

The all-equity nature of the transaction allows unitholders of both partnerships to participate in the value creation potential of the combined partnership.

**Complementary Assets**

Energy Transfer's acquisition of Enable will increase Energy Transfer's footprint across multiple regions and provide increased connectivity for Energy Transfer's natural gas and NGL transportation businesses.

Energy Transfer will significantly strengthen its NGL infrastructure by adding natural gas gathering and processing assets in the Anadarko Basin in Oklahoma and integrate high-quality assets with Energy Transfer's existing NGL transportation and fractionation assets on the U.S. Gulf Coast. The acquisition will also provide significant gas gathering and processing assets in the Arkoma basin across Oklahoma and Arkansas, as well as the Haynesville Shale in East Texas and North Louisiana.

Enable's transportation and storage assets enhance Energy Transfer's access to core markets with consistent sources of demand and bolster its portfolio of customers anchored by large, investment-grade customers with firm, long-term contracts. Energy Transfer will further enhance its connectivity to the global LNG market and the growing global demand for natural gas as the world transitions to cleaner power and fuel sources.

**Synergies**

The combination of Energy Transfer's significant infrastructure with Enable's complementary assets will allow the combined company to pursue additional commercial opportunities and achieve cost savings while enhancing Energy Transfer's ability to serve customers.

Energy Transfer expects the combined company to generate more than $100 million of annual run-rate cost and efficiency synergies, excluding potential financial and commercial synergies. Potential commercial synergies include significant incremental earnings, which may result from integrating Enable's Anadarko gathering and processing complex with Energy Transfer's fractionation assets on the U.S. Gulf Coast.

**Timing and Conference Call Information**

The transaction has been approved by the Board of Directors of ET and the Conflicts Committee and the Board of Directors of Enable. The two largest unitholders of Enable, OGE Energy Corp. ("OG&E") and CenterPoint Energy, Inc. ("CNP"), which also control the General Partner of Enable, have entered into support agreements, pursuant to which they have agreed to vote their Enable units in favor of the merger, upon effectiveness of the S-4 Registration Statement with the SEC. These two unitholders own approximately 79.2% of Enable's outstanding common units. The transaction is expected to close in mid-2021 and is subject to the satisfaction of customary closing conditions, including Hart Scott Rodino Act clearance. Upon closing, Enable unitholders are expected to own approximately 12 percent of Energy Transfer's outstanding common units.

Energy Transfer will host a conference call February 17 at 4:00 p.m. Central Time / 5:00 p.m. Eastern Time to discuss this transaction along with its fourth quarter and full-year 2020 results. The conference call will be broadcast live via a webcast, which can be accessed through https://www.energytransfer.com/.

**Advisors**

Citi and RBC Capital Markets acted as financial advisors to Energy Transfer and Latham & Watkins LLP acted as legal counsel. Goldman Sachs & Co. LLC acted as financial advisor to Enable and Vinson & Elkins LLP acted as legal counsel. Intrepid Partners, LLC acted as financial advisor and Richards, Layton & Finger, PA acted as legal counsel to Enable's conflicts committee.

\* \* \*

29. The Boards of both companies have unanimously agreed to the Proposed Transaction. It is therefore imperative that Energy Transfer's unitholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

30.     On March 18, 2021, Energy Transfer and Enable jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

31.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections," and "Enable Projections") and provided them to the Board and the Financial Advisors by management of both companies with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

32.     First, the Registration Statement completely fails to disclose any projections for the combined company.

33.     For the Enable Projections the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted EBITDA; Distributable Cash Flow; and Unlevered Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

34.     For the Company Projections the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2023: Adjusted EBITDA and Distributable Cash Flow attributable to partners, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

35.     For both Company Projections and Enable Projections, the Registration Statement fails to disclose any figures for net income for the companies.

36.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly

understandable method) of the differences between the non-GAAP financial measure disclosed or

released with the most comparable financial measure or measures calculated and presented in

accordance with GAAP. 17 C.F.R. § 244.100.

37.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

38.     Thus, to cure the Registration Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration

Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most

comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement

not misleading.

*Omissions and/or Material Misrepresentations Concerning the Company's Financial Advisors*

39.     First, the Registration Statement fails to state the role that Citigroup and RBC

played in the Proposed Transaction and whether they performed fairness opinions or any financial

analyses underlying the opinions for the Board. If the Board was provided with analyses to help

the Board assess the merits of the Proposed Transaction, this information is material as it would

be helpful to unitholders deciding whether or not to support the Proposed Transaction. In addition,

failure to disclose the work that Citigroup and RBC did misleads the Energy Transfer unitholders

regarding these financial advisors' involvement in the process.

40. The Registration Statement also fails to disclose the fee, if any, that Citi and RBC are expected to receive from the Company in connection with its engagement and if they provided any type of financial services for either Energy Transfer or Enable in the prior two years preceding the signing of the Merger Agreement.

41. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Registration Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration

Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's unitholders vote in favor of the Proposed Transaction.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

46.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Energy Transfer within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Energy Transfer, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Energy Transfer, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Energy Transfer, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed

Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

52. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 31, 2021                    **MELWANI & CHAN LLP**

                                         By:  */s/ Gloria Kui Melwani*
                                              Gloria Kui Melwani
                                              1180 Avenue of the Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: glroia@melwanichan.com